# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:08-cv-483-RJC

| | |
|---|---|
| JOSEPH BRIAN TARLETON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| RICKY ANDERSON, Admin., ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, (Doc. No. 1); Respondent's Motion for Summary Judgment, (Doc. No. 11); and Petitioner's Motion for Summary Judgment, (Doc. No. 19).

## I.   *HISTORY*

### A.   **State Court History and Proceedings**

Pro se petitioner Joseph Brian Tarleton is a state court prisoner who, on February 8, 2006, in Union County Superior Court, the Honorable Susan C. Taylor presiding, was found guilty after a jury trial of nine counts of taking or attempting to take indecent liberties with a minor and one count of disseminating harmful materials. The trial court sentenced Petitioner to nine consecutive terms of twenty to twenty-six months' imprisonment for the indecent liberties convictions. For the dissemination conviction, the court sentenced Petitioner to a term of six to eight months' imprisonment, as well as a five-year term of probation, to begin after the expiration of his sentences for the indecent liberties convictions. Cynthia Brooks represented Petitioner at trial.

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> Defendant was indicted on 29 November 2004 of 6 counts of taking or attempting to take indecent liberties with a minor, E.M. and 1 count of disseminating obscenity to a minor under the age of 13 years. Defendant was thereafter indicted on 26 April 2004 of 3 counts of taking indecent liberties with a minor, J.T.(1).
>
> The State presented evidence at defendant's trial tending to show the following:
>
> Defendant was the uncle of the minor children, E.M. and J.T.(1), who alleged that sexual incidents occurred between them and defendant for several years. Defendant lived in a camper and his shop on his mother's and the minors' grandmother's property. E.M. and J.T.(1) regularly visited their grandmother.
>
> E.M. testified that, when she was 10 years old, defendant showed her and her cousin, J.T.(1), Playboy magazine, computer images of naked children and adults, and computer images of men having sex with children. Defendant told the girls that he wanted to engage in the actions portrayed with them. On another occasion, at E.M.'s grandmother's house, defendant asked E.M. and her cousin to perform fellatio on him. Defendant subsequently showed E.M. and her cousins computer images of naked men and women engaged in intercourse and naked men having sex with children when the children visited defendant in his shop. After viewing the pictures, defendant told E .M., "I can't wait until me and you do that." When E.M. was 11 years old, defendant attempted to take her shirt off and told E.M. that her cousin Sarah allowed him to do that. E.M. testified that when she was 12 years old defendant exposed himself twice and asked her to perform fellatio, once when she and defendant were on a four-wheeler ride and once in defendant's shop. Defendant further showed E.M. a nude photograph of a little girl whom he identified as E.M.'s cousin J.N. and told E.M. that he and J.N. had previously engaged in intercourse and that now he and E.M. could as well. E.M. did not report these incidents to anyone because defendant threatened to hurt her and her grandmother if she told anyone.
>
> J.T.(1) testified that she first remembered being touched by defendant when she was 5 years old. Defendant rubbed her inner thighs, tried to kiss her and explained to her that this is how adults kiss. Defendant subsequently fondled J.T.(1)'s breast and vagina and showed her how to perform fellatio which she did. Defendant asked J.T.(1) to perform fellatio on him at least 10 times between 1991 and 2004. When J.T.(1) visited defendant in his camper, defendant showed her computer images of children and adults engaging in intercourse and suggested that they act this out. Defendant also took J.T.(1) out on the four-wheeler and fondled her. J.T.(1) testified that defendant would try to persuade the girls to engage in sexual activity with them by telling J.T.(1) that he had done those sexual things with E.M. and telling E.M. that he had done those things with J.T.(1). J.T.(1) did not tell anyone because defendant threatened to hurt her grandmother or someone in their family if she did.

> At trial, both E.M. and J.T.(1) identified magazines recovered from defendant's shop at the time of arrest as the magazines shown to them by defendant and identified defendant as the perpetrator of the incidents described by them.

State v. Tarleton, No. COA06-760, 2007 WL 1119343, at *1-2 (N.C. Ct. App. Apr. 17, 2007).

In addition to evidence regarding the victims listed in Petitioner's indictments, the State presented evidence indicating that Petitioner sexually abused two other children. The Court of Appeals summarized this additional evidence as follows:

> In the instant case, the trial court admitted the testimony of the victims' cousins, J.N. and J.T.(2), regarding incidents of sexual misconduct between defendant and the two minor children under Rule 404(b). J.T.(2) testified that defendant, his uncle, first made him put his mouth on defendant's penis when he was 6 or 7 years old. He further testified that defendant later performed fellatio on J.T.(2) and forced him to masturbate defendant. Defendant also showed J.T.(2) nude photographs of women and young girls in magazines and on the internet. J.T.(2) testified that these incidents occurred when he would visit his aunt's house where defendant was at that time living in a camper on her property. Defendant told J.T.(2) not to tell anyone about the incidents or else he would get in trouble.
>
> J.N., J.T.(2)'s sister, testified that defendant, her uncle, fondled her in her vaginal area, showed her magazine photographs of naked women and forced her to engage in reciprocal fellatio when she was between the ages of 6 and 8 years old. J.N. testified that many of these acts occurred when she was at her grandmother's house visiting while her grandmother was asleep. J.N. further testified that additional sexual acts occurred between her and defendant in a house that he owned in Albemarle. J.N. stated that defendant threatened that if she ever told anyone about these incidents, he would go to jail and she would never see him again. She further testified that she was afraid of defendant.

Id. at *2-*3.

Petitioner appealed and, in an unpublished opinion, the North Carolina Court of Appeals found no error. Barbara S. Blackman represented Petitioner on appeal. On or about May 1, 2007, Petitioner filed a pro se petition for discretionary review in the North Carolina Supreme Court. On June 27, 2007, that court denied Petitioner's petition. State v. Tarleton, 361 N.C. 436, 649 S.E.2d 894 (2007).

3

On January 28, 2008, Petitioner filed a pro se motion for appropriate relief ("MAR") in Union County Superior Court. On February 11, 2008, Petitioner filed a motion to amend his MAR ("Amended MAR"). On April 22, 2008, the Superior Court, the Honorable W. David Lee presiding, denied Petitioner's MAR and Amended MAR. On September 9, 2008, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals seeking that court's review of the Superior Court's order denying his MAR. On September 26, 2008, the North Carolina Court of Appeals denied Petitioner's certiorari petition.

**B.     Federal Habeas Allegations**

On October 3, 2008, Petitioner timely filed the instant Petition, alleging the following claims: (1) that Union County Officer Joel Cody Luke fabricated statements to gain arrest warrants; (2) that Officer Luke fabricated Petitioner's statement and used it to manipulate others; (3) that Officers Luke and Jeff Outen threatened Petitioner's mother to obtain a consent to search her home, manipulated evidence during the search, and ignored exculpatory evidence; (4) that Officer Luke obtained a fabricated medical report for one of the victims and used it to manipulate others; (5) that the prosecutor knew or should have known that evidence presented to the Grand Jury was incomplete, fictitious, manipulated, and/or obtained as a result of an illegal search; (6) that Petitioner's trial attorney refused to obtain documented exculpatory evidence, interview defense witnesses, or explore serious police misconduct; (7) that the trial judge demonstrated a personal interest in his case; (8) that Petitioner's state-funded private investigator withheld exculpatory evidence; (9) that the victims' allegations against Petitioner changed between the time of his indictment and trial, and, thus, he was convicted based upon allegations for which he was not indicted and arrested; (10) that the trial judge ignored police misconduct and death threats to potential defense witnesses; (11) that a perspective juror, Bonnie Stutzman,

4

was led by the State to poison the minds of the entire jury pool; (12) that the State compared Petitioner to recent horrific news events and declared it was the jury's duty to convict; (13) that Officer Luke was allowed by the prosecution and defense counsel to give perjured testimony; (14) that victim E.T. was manipulated to the point she did not know what her testimony was and, thus, came up with new allegations; (15) that the trial court allowed the State to present obviously untrue evidence; (16) that J.T.(1) was severely manipulated before and during trial; (17) that Officer Kevin Rogers was allowed to give known perjured testimony to conceal two illegal search and seizures; (18) that Officer Luke was allowed to give known perjured testimony concerning numerous issues; (19) that juror number three worked with and received her paycheck from an alleged victim who testified at trial; (20) that the trial court's statements were altered and/or deleted from the trial transcript; (21) that the trial court's Rule 404(b) evidence ruling was obviously constructed prior to the Rule 404(b) hearing; (22) that, during the first half of Petitioner's trial, the prosecution communicated prejudicial/inadmissible material to the entire jury, with the assistance of Officer Luke and juror number five, as defense counsel and the trial court did nothing; (23)(a) that J.T.(2) and J.N. were allowed to give untrue and altered testimony; (23)(b) that J.N. accused Petitioner of burning a structure for insurance money; (23)(c) that J.N. was allowed to testify about a bribe in a letter that could not be produced; (24) that plea bargain issues were presented to the jury through a prosecution witness, Lisa Tarleton; (25) that some of Lisa Tarleton's testimony, which was deleted from the transcript, discredited other testimony and indicated that there was police and prosecutorial misconduct; (26) that the testimony of Petitioner's mother, Elizabeth Tarleton, revealed facts surrounding the serious police misconduct, and the two attorneys knew about the two illegal searches but concealed that from the trial court and Petitioner; (27) that Petitioner's trial counsel did not call critical

witnesses and told the state-funded private investigator to ignore exculpatory evidence; (28) that, because of Petitioner's testimony, the State, the trial court, and his attorney participated in character assassination, withheld documentation and evidence, brought out plea bargaining issues, labeled him an alcoholic and arsonist, indicated that he associated with unsavory characters, falsified police reports, and convinced the jury he did not believe in God; (29) that testimony regarding Petitioner's religious beliefs was deleted from the transcript; (30) that the prosecutor's assistant tampered with the audio system; (31) that the prosecutor compared Petitioner to recent horrific news events, vouched for all prosecution witnesses, declared Petitioner to be a liar and non-believer, and accused him of associating with a convicted molester in jail; (32) that the trial transcript was altered before being transmitted to the North Carolina Court of Appeals; and (33) that the North Carolina Appellate Defender Staples Hughes and Petitioner's appellate counsel Barbara Blackman sabotaged his appeal by ignoring issues, and that Hughes posed as Petitioner's retained private investigator to stop Petitioner from retrieving testimony deleted from the transcript.

## II. *ANALYSIS*

### A. *Summary Judgment Standard of Review*

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment a matter of law." FED. R. CIV. P. 56(a). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, and answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

**B.**   *Section 2254 Standard of Review*

In addition to the summary judgment standard set forth above, this Court's review of Petitioner's claims is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  This Court may grant habeas relief on claims of constitutional error that were adjudicated on their merits in state court only if that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result][.]" Williams v. Taylor, 529 U.S. 362, 405 (2000); Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams). A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case." Williams, 529

7

U.S. at 407; Lewis, 609 F.3d at 300–01 (stating also that a state court unreasonably applies federal law when it "extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply) (citation and quotation marks omitted). Critically, "an unreasonable application of federal law is different from an incorrect application of federal law" for § 2254(d)(1) purposes. Williams, 529 U.S. at 410.

As amended by AEDPA, § 2254(d) requires that a habeas court "determine what arguments or theories supported or . . . could have supported, the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011). The habeas court then "must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." Id. In other words, to obtain relief under AEDPA's deferential standard, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786–787.

**1.**     ***All of Petitioner's Grounds for Relief Except for Grounds 23(b) and 33 Are Procedurally Defaulted***

Here, with the exception of Ground 23(b) and the portion of Ground (33) alleging ineffective assistance of appellate counsel, Petitioner's grounds for relief are procedurally defaulted for the purpose of federal habeas review because the state MAR court expressly applied North Carolina's mandatory procedural bar statute in denying the remaining claims. *See* N.C. GEN. STAT. § 15A-1419(a)(1), (a)(3) and (b); see also Nickerson v. Lee, 971 F.2d 1125, 1127 (4th Cir. 1992) ("A federal court may not address the merits of a habeas petition when the

state court's denial of a petition for collateral relief rested on [an] independent and adequate state law ground of procedural default."); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001) (concluding that North Carolina's Section 15A-1419 post-conviction procedural bar provision is now mandatory). Specifically, the MAR court concluded that, with the exception of Petitioner's grounds 23(b) and 33, Petitioner "was in a position to adequately raise each of the grounds or issues underlying the [MAR]" on direct appeal, but he did not. (Ex. 9 at 1).

Petitioner has also failed to show cause for excusing the procedural default. Thus, this Court is precluded from reviewing all of Petitioner's grounds for relief except for 23(b) and 33.[1]

**a.      Petitioner's Ground 23(b)–that Victim J.N. Accused Petitioner of Burning a Structure for Insurance Money**

Petitioner raised ground 23(b) in his brief presented to the North Carolina Court of Appeals on direct review, contending that the admission of certain evidence was prejudicial. The Court denied Petitioner's claim, reasoning as follows:

> Defendant next excepts to the trial court's admission of evidence that defendant burned down a house where such evidence was admitted in error and was further plain error.
>
> During the testimony of J.N. the following exchange occurred:
>
> Q: Does the house in Albemarle still exist?
> A: No, it does not.
> Q: Do you know what happened to it?
> A: It was burnt.

---

[1] Petitioner did raise at least some of his grounds for relief in his petition for discretionary review filed in the North Carolina Supreme Court on direct review. (Ex. 5). This does not, however, excuse Petitioner's procedural default because raising claims for the first time in a discretionary petition is not sufficient to present the claims to the state courts for adjudication. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (raising a claim for the first time in a discretionary petition to a state appellate court is not sufficient to exhaust state court remedies).

9

> On direct examination defendant testified that the house in Albemarle burned down as a result of a chimney fire. On cross-examination the State asked defendant whether he told J.N. that he burned the house down for insurance money, and defendant answered over objection that it was a rumor started by the father of J.N.
>
> Even assuming *arguendo*, that it was error for the trial court to admit evidence regarding defendant's alleged burning of a house in Albemarle for insurance money, the inclusion of the evidence could not have affected the case where there was overwhelming evidence of defendant's guilt. The two victims, defendant's nieces, testified to inappropriate sexual encounters between them and defendant, including encounters involving both girls, they identified several magazines recovered from defendant's home as those shown to them by defendant and identified defendant as the perpetrator of the crime. Thus, any possible error would have been harmless.

Tarleton, 2007 WL 1119343, at *3.

Petitioner's Ground 23(b) challenges the admissibility of evidence under North Carolina evidentiary rules. Ground 23(b) is therefore not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004) ("Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review.").

A federal habeas court's review is limited to assessing whether the alleged evidentiary error "so infected the entire trial that the resulting conviction violated due process." Estelle, 502 U.S. at 67-68; Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (providing that state court jury instruction must render entire trial fundamentally unfair to warrant federal habeas relief). Even assuming that the admission of the above-cited evidence was error, the admission did not render Petitioner's trial unfair, given the other, overwhelming evidence of his guilt. Therefore, the state court's adjudication as to Petitioner's Ground 23(b) was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

**b.     Petitioner's Ground 33–that Petitioner's appellate counsel, Barbara Blackman, sabotaged his appeal by ignoring issues.**

In denying Petitioner's MAR, the Superior Court stated the following with regards to Petitioner's ineffective assistance of appellate counsel claim:

> With respect to the claim of ineffective assistance of appellate counsel, the Court concludes that the allegations in support of the motion are wholly insufficient to indicate either that the appellate representation fell below an objective standard of reasonableness or that any alleged deficient performance by counsel prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668 (1984) and State v. Braswell, 312 N.C. 553, 324 S.E.2d 241 (1985).

(Ex. 9 at 2.) Here, with regard to Ground 33, the MAR court's adjudication was simply neither contrary to nor an unreasonable application of Strickland and its progeny.

With regard to the grounds in his federal habeas petition that were procedurally defaulted because Petitioner failed to raise them on direct appeal, Petitioner argues in his federal habeas petition that his appellate counsel was ineffective for failing to raise those grounds on direct appeal. Thus, Petitioner appears to contend in his federal habeas petition that he can establish cause to excuse Petitioner's procedural default. As noted, claims of ineffective assistance of appellate counsel are properly analyzed under the familiar two-prong test of Strickland. Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying Strickland to claim of attorney error on appeal). Thus, Petitioner must demonstrate that (1) counsel's performance was deficient and (2) that, but for counsel's deficient performance, there was a reasonable probability that the result on appeal would have been different. Strickland, 466 U.S. at 686.

> Counsel is not obligated to assert all nonfrivolous issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (citations and quotation marks omitted), cert. denied, 534 U.S. 830 (2001).

Petitioner's ineffective assistance of appellate counsel allegations are conclusory and unsupported.  Petitioner suggests in his federal habeas petition, for instance, that his appellate counsel was ineffective for failing to bring the following claims on appeal, among others: that the investigating police officers, the Assistant District Attorney prosecuting his case, his trial attorney, his state-funded private investigator, the trial judge, a juror, the North Carolina Appellate Defender, and his appellate counsel all suppressed and falsified evidence, permitted the admission of perjured testimony, altered trial transcripts, sabotaged his appeal, and/or generally thwarted his defense in an effort to wrongfully convict him.  Petitioner's allegations are wholly conclusory and are simply not supported by any reliable, admissible summary judgment evidence.  In any event, "counsel is not deficient for not raising every non-frivolous issue on appeal."  Beamon v. United States, 189 F. Supp. 2d 350, 357 (E.D. Va. 2002); see also Fitzgerald v. Greene, 150 F.3d 357, 369 (4th Cir. 1998).  Even if the court were to determine that appellate counsel was ineffective for failing to raise any of the claims that Petitioner cites in his federal habeas petition, the outcome of Petitioner's appeal simply would not have been any different in the absence of deficient performance by appellate counsel.  The weight of the evidence against Petitioner was overwhelming.  Each of the child victims testified unequivocally about Petitioner's interactions with them and each of the sexual offenses for which he was ultimately convicted.  In sum, Petitioner has fallen far short of showing that his appellate counsel was ineffective in failing to bring these claims.

### III. ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) Respondent's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;

(2) Petitioner's Motion for Summary Judgment, (Doc. No. 19), is **DENIED**;

(3) Petitioner's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus, (Doc. No. 1), is **DENIED** and **DISMISSED**; and

(4) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336–38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, petitioner must establish both that dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

Signed: January 19, 2012

Robert J. Conrad, Jr.
Chief United States District Judge